COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Willis and Bray
Argued at Richmond, Virginia

HUBERT GARL MULLINS

MEMORANDUM OPINION[*] BY
v.  Record No. 1250-94-3           JUDGE JAMES W. BENTON, JR.
                                        JUNE 25, 1996
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF WISE COUNTY
J. Robert Stump, Judge

David L. Scyphers (Johnson, Scyphers &
Austin, P.C., on brief), for appellant.

Kathleen B. Martin, Assistant Attorney
General (James S. Gilmore, III, Attorney
General, on brief), for appellee.

Hubert Garl Mullins was convicted by a jury of conspiracy to distribute cocaine and two counts of distribution of cocaine. He contends that the trial judge erred in (1) finding no statutory speedy trial violation, (2) joining his trial with another defendant and denying his motion to sever the individual counts of the indictment, (3) denying his motion for a continuance, (4) allowing testimony concerning baggies that were found at his business but not produced at trial, and (5) by admitting in evidence cocaine and a related certificate of analysis that were not connected to him. For the reasons that follow, we reverse the convictions and remand for a new trial.

---

[*]Pursuant to Code § 17-116.010 this opinion is not designated for publication.

The grand jury indicted Mullins on one count of conspiracy to distribute cocaine and seven counts of distribution of cocaine. The Commonwealth alleged that Mullins, an operator of a game room and pool hall in Coeburn, Virginia, participated in a cocaine distribution ring in Southwest Virginia.

In a bill of particulars, the Commonwealth alleged that the seven counts of distribution of cocaine involved distribution to seven different individuals. Four of the individuals, Billy Hopkins, Scott Sluss, Steve Wright, and Dexter Ring, did not testify at trial. Although testimony proved that Mullins sold cocaine, none of the evidence proved that Mullins distributed cocaine to any of these four individuals. Another individual, Kenneth Dale Pruitt, testified that Mullins did not distribute cocaine to him and that he never agreed with Mullins to distribute cocaine. No evidence proved that Mullins distributed cocaine to Pruitt. At the close of the Commonwealth's case-in-chief, the trial judge struck the five counts charging distribution to those five individuals. The prosecutor readily admitted that "[t]he only viable counts from the Commonwealth's evidence are Counts 1, 5, and 8."

Count 1 involved the conspiracy. In one of its supplemental responses to Mullins' motion for a bill of particulars, the Commonwealth listed twenty-two individuals as members of the alleged conspiracy. At trial, Patricia Ann Beaver and Clifford

Mullins testified that Mullins advanced them cocaine to sell and that they paid him from the proceeds of the sales. In addition, Dale Marshall testified that he "associated . . . with [Mullins] for the purpose of distributing cocaine." The jury convicted Mullins of conspiracy.

Counts 5 and 8 charged distribution of cocaine to Clifford Mullins and David Ely respectively. Clifford Mullins testified that he purchased "[an] eight ball of cocaine" from Mullins. He further testified that he used cocaine about one hundred times after obtaining it from Mullins. Ely testified that on ten to fifteen occasions he purchased cocaine at the game room from Mullins. The jury convicted Mullins of distributing cocaine to Clifford Mullins and David Ely.

Larry Michael Popp, who was tried jointly with Mullins, was also charged with conspiracy to distribute cocaine and with aiding and abetting in the distribution of cocaine. At trial, Pruitt testified that he purchased large amounts of cocaine for Popp who would in turn sell it. Russell Barry Peters and Joe Greer admitted receiving cocaine from Pruitt and delivering it to Popp. Johnny Poole, a cocaine user, stated that he purchased cocaine from Popp. From this evidence and other testimony at trial, the jury convicted Popp of conspiring to distribute cocaine and distribution of cocaine.

## II.

Mullins was indicted by a grand jury on October 30, 1992.

He was arrested November 16, 1992, and later released on bail. Under these circumstances, Code § 19.2-243 required that Mullins' trial commence within nine months from the date of his arrest.

Mullins was tried on February 7, 1994. Obviously, more than nine months elapsed from the time of Mullins' arrest on November 16, 1992, until his trial on February 7, 1994. However, Code § 19.2-243 contains the following language pertinent to the speedy trial issue:

> The provisions of this section shall not apply to such period of time as the failure to try the accused was caused:
>
>     *     *     *     *     *     *     *
>
> By continuance granted on the motion of the accused or his counsel, or by concurrence of the accused or his counsel in such a motion by the attorney for the Commonwealth, or by the failure of the accused or his counsel to make a timely objection to such a motion by the attorney for the Commonwealth . . . .

Mullins concedes that he requested a continuance to January 19, 1993. He contends that for purposes of the speedy trial analysis the nine month time period should be calculated from that date. He argues that when other delay attributed to him is considered, the time to try him expired on January 18, 1994, twenty days prior to his trial date. The Commonwealth argues that when the motions and continuances are properly charged to Mullins no violation occurred.

For purposes of this appeal, we focus on the contested period from October 25, 1993 to February 7, 1994. The

- 4 -

Commonwealth contends that Mullins agreed to a continuance for that period. Mullins asserts that he did not.

Mullins raised the issue of speedy trial in a motion to set aside the jury's verdict. The trial judge held an evidentiary hearing on May 24, 1994 to determine if Mullins had agreed to the continuance. At that hearing, the trial judge relieved Mullins' trial counsel from his representation and substituted Mullins' current counsel. Mullins' trial counsel was called as a witness and testified that prior to the October 1993 request for a continuance several motions filed by Mullins had not been resolved. He further testified that the following occurred at an October 1993 session of the court:

> What happened, and I, I could go through and reconstruct all this. I haven't had the benefit of doing that. But what recall, what I recall happening was we appeared before the Court, there were joinder motions pending. There was briefs that I had written on that as late a December that the Court wanted briefs submitted. We filed motions opposing that. We filed motions I think for severance. They had motions for joinder. And there was umpteen motions, and it was from my recollection, I thought we talked to the Court at the bench. We may not have. It may have been in camera. I thought it was at the bench. The Court wanted to know if everybody was prepared to go forward. I recall saying the Court hasn't ruled on all these motions. Your Honor said, well does that mean you're prepared to go forward? I said well I can't go forward without the Court ruling. And it was discussed, and it was agreed it'd be continued. And then I received a continuance order which I forwarded, actually I wrote a letter dated October 20th advising that it had been continued, and then a letter dated October 21st attached to which I forwarded a copy.

Following the May 1994 evidentiary hearing, the prosecutor and Mullins' counsel submitted briefs on the issue. The trial judge convened another hearing on June 17, 1994. However, the record on appeal does not include the transcript from the June 17, 1994 hearing. The trial judge ruled on that day that "for reasons stated to the record" he found Mullins' right to a speedy trial had not been denied. We do not know whether the trial judge heard more testimony at that hearing or why the trial judge ruled that Mullins' was charged with the disputed time period.

"The importance of the record is obvious, for it is axiomatic that an appellate court's review of the case is limited to the record on appeal." Turner v. Commonwealth, 2 Va. App. 96, 99, 341 S.E.2d 400, 402 (1986). Moreover, because we are required to review the record "in assessing responsibility for delay in trying a defendant," Godfrey v. Commonwealth, 227 Va. 460, 464, 317 S.E.2d 781, 783 (1984), any hearing germane to that issue is indispensable to our review. "If . . . the transcript is indispensable to the determination of the case, then the requirements for making the transcript a part of the record on appeal must be strictly adhered to." Turner, 2 Va. App. at 99, 341 S.E.2d at 402. That responsibility lies with Mullins, the appellant. Ferguson v. Commonwealth, 10 Va. App. 189, 194, 390 S.E.2d 782, 785, aff'd in part, rev'd in part, 240 Va. ix, 396 S.E.2d 675 (1990). Because the transcript is indispensable to a determination of the issue, this Court cannot consider the speedy

- 6 -

trial issue on appeal.

III.

An accused may be tried for several offenses at one trial "if justice does not require separate trials," Rule 3A:10(c), and the offenses are "based on the same act or transaction, or on two or more acts or transactions that are connected or constitute parts of a common scheme or plan." Rule 3A:6(b). See also Cheng v. Commonwealth, 240 Va. 26, 33, 393 S.E.2d 599, 603 (1990).

Seven counts of the indictment alleged that Mullins distributed controlled substances to "John Doe[s]" one through seven. The other count of the indictment alleged that Mullins engaged in a conspiracy with others to distribute cocaine. Prior to trial, the Commonwealth filed a "proffer of evidence" alleging that Mullins' eight charges were connected in various ways and arose from "a common plan and scheme." The trial judge ruled that the offenses could be joined because they were transactions that comprised a common scheme or plan.

Mullins asserts that the proffer proved to be erroneous. Indeed, the record establishes that at the conclusion of its case-in-chief, the prosecutor stated: "The only viable counts from the Commonwealth's evidence are Counts 1 [conspiracy], 5 [distribute to John Doe #4], and 8 [distribution to John Doe #7]." Thus, the Commonwealth tacitly conceded that the evidence was insufficient to support counts 2, 3, 4, 6, and 7, despite having proffered evidence that those charges constituted part of a common plan or scheme.

A trial judge's decision to join offenses will be reversed, however, only for an abuse of discretion. <u>Cheng</u>, 240 Va. at 33, 393 S.E.2d at 603. We find no basis to hold that the trial judge abused his discretion in allowing joinder of the offenses based on the Commonwealth's initial and supplemental proffers of evidence. The judge had no reason to believe that the Commonwealth would not or could not prove its case.

However, after the trial judge struck five counts of the indictment that the Commonwealth failed to prove, Mullins moved for a mistrial because of the Commonwealth's failure to prove a common scheme and the prejudice resulting from the joinder. The Commonwealth's evidence failed to prove that Mullins' distribution of cocaine to Clifford Mullins (Count 5) was related in any way to the distribution to David Ely (Count 8). The Commonwealth also did not prove that the conspiracy between Mullins and Popp was in any way related to the cocaine distributions to either Clifford Mullins (Count 5) or David Ely (Count 8). The entire record is devoid of any proof relating the conspiracy and distribution charges to a common plan or scheme.

Because the Commonwealth failed to offer any evidence that tended to prove that the eight indictments or three convictions were "based on the same act or transaction, or on two or more acts or transactions that [were] connected or constitute[d] parts of a common scheme or plan," Rules 3A:10(b), 3A:6(b), the record supports Mullins' argument that the joinder of all eight charges

prejudiced his defense to the three unrelated charges. During its case-in-chief, the Commonwealth introduced evidence of the two unrelated drug distributions and the conspiracy. Instead of being limited to proving a particular, distinct crime, the Commonwealth introduced evidence of all the other crimes. If the three crimes had been prosecuted separately, the Commonwealth could not have been entitled to introduce evidence of the other alleged offenses at each trial. See Godwin v. Commonwealth, 6 Va. App. 118, 123, 367 S.E.2d 520, 522-23 (1988). Given the Commonwealth's failure to connect any of the offenses to a common plan or scheme, the net effect of the admission of evidence on all the eight charges was to deny Mullins a fair trial. Consequently, we hold the trial judge abused his discretion in overruling Mullins' motion for a mistrial at the close of the Commonwealth's case. See Conway v. Commonwealth, 12 Va. App. 711, 717, 407 S.E.2d 310, 313 (1991)(en banc); Henshaw v. Commonwealth, 3 Va. App. 213, 220, 348 S.E.2d 853, 857 (1986).

IV.

When Mullins was indicted, an accused could demand that he be tried individually. See Code § 19.2-263 (repealed 1993). Mullins moved for separate trials. On March 2, 1993, the trial judge ordered Mullins' trials severed from the other defendants as required by Virginia law. Id. One month later, the trial judge granted the Commonwealth's motion for a continuance until August 11, 1993. During that continuance, Code § 19.2-262.1

became effective on July 1, 1993, and changed the law as follows:

> On motion of the Commonwealth, for good cause shown, the court, in its discretion, may order persons charged with participating in contemporaneous and related acts or occurrences or in a series of acts or occurrences constituting an offense or offenses to be tried jointly unless such joint trial would constitute prejudice to a defendant. If the court finds that a joint trial would constitute prejudice to a defendant, the court shall order severance as to that defendant or provide such other relief justice requires.

Code § 19.2-262.1.

On July 15, the Commonwealth moved the trial judge to join the trials of Mullins and Popp with four other defendants. In addition to Popp and Mullins, the Commonwealth named Sammy Stallard, Dexter Ring, Roger Murphy and George Mayes as co-defendants and asked the trial judge to jointly try all the co-defendants. The Commonwealth's supplemental proffer of evidence alleged that all of these individuals participated "in a large scale distribution of cocaine scheme from 1988 through 1992." In a ruling from the bench, the trial judge allowed the Commonwealth to try the individuals jointly, except for Sammy Stallard. Nothing in the record states why the Commonwealth ultimately decided to try only Popp and Mullins together.

The Commonwealth asked for and received the continuance because of its failure to furnish Mullins with a bill of particulars. Mullins alleges that the continuance was a stalling tactic designed to make use of the favorable provisions of Code

§ 19.2-262.1.  We need not decide that point.  We only note that by continuing the case until August, the Commonwealth was able to try Mullins and Popp together.  We also recognize that "procedural provisions of the statute in effect on the date of trial control the conduct of the trial insofar as practicable."  Smith v. Commonwealth, 219 Va. 455, 476, 248 S.E.2d 135, 148 (1978), cert. denied, 441 U.S. 967 (1979).  However, because this case must be retried we need not address whether the trial judge abused his discretion in changing his ruling so as to allow a joint trial, where the indictments occurred long before the effective date of the new procedure and the record suggests that the trial was delayed because of the Commonwealth's tactic.

V.

Mullins contends that the trial judge should not have allowed testimony concerning the plastic bags seized by the police from the attic of his game room.  The Commonwealth attempted to prove that the bags found by the police were the type used by Mullins to package cocaine.  When Mullins' counsel asked to view the bags seized by the police, the Commonwealth stated that the bags could not be found.

Mullins did not allege and there is no indication in the record that the baggies were exculpatory evidence.  See Brady v. Maryland, 373 U.S. 83 (1963).  When Brady is not applicable, the Supreme Court has held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve

potentially useful evidence does not constitute a denial of due process of law." Arizona v. Youngblood, 488 U.S. 51, 58 (1988). Virginia does not offer any greater protection than set forth in Youngblood. See Tickel v. Commonwealth, 11 Va. App. 558, 562-63, 400 S.E.2d 534, 537 (1991); Thomas v. Commonwealth, 244 Va. 1, 18, 419 S.E.2d 606, 615-16, cert. denied, 506 U.S. 958 (1992). Accordingly, the trial judge did not err in allowing testimony concerning the plastic baggies discovered at Mullins' game room.

                              VI.

Mullins also contends that the trial judge erred in refusing to grant a continuance when the Commonwealth amended the bill of particulars at trial. The record reflects that Mullins' counsel never requested a continuance based on the amendment. Instead, counsel requested that Clifford Mullins and Kenneth Pruitt "not be able to testify in regard to those two counts [of cocaine distribution], or that those two counts be severed."

Rule 5A:18 bars this Court from considering the appropriateness of a continuance if counsel does not request one. Counsel may not "remain silent at trial" and claim on appeal that the trial judge erred. Gardner v. Commonwealth, 3 Va. App. 418, 423, 350 S.E.2d 229, 232 (1986). "The purpose of this rule is to allow correction of an error if possible during the trial, thereby avoiding the necessity of mistrials and reversals." Id.

                             VII.

At trial, the Commonwealth introduced in evidence a bag of

cocaine during the testimony of Ely.  The Commonwealth acknowledged that another individual, not Mullins, had sold the bag of cocaine to an undercover agent.  No testimony connected Mullins to the bag of cocaine.  Nonetheless, the trial judge allowed introduction of the cocaine during Ely's testimony as proof that the cocaine was packaged in a fashion similar to cocaine purchased by Ely from Mullins.  The judge instructed the jury that the cocaine is "for the purpose of showing to you what a baggy of white powder looks like" and that the baggy with cocaine "is not what allegedly was purchased by Mr. Ely from [Mullins]."

Generally, the "[a]dmission of items of demonstrative evidence to illustrate testimonial evidence is . . . a matter within the sound discretion of a trial court."  Mackall v. Commonwealth, 236 Va. 240, 254, 372 S.E.2d 759, 768 (1988), cert. denied, 492 U.S. 925 (1989); Peoples v. Commonwealth, 147 Va. 692, 705, 137 S.E. 603, 607 (1927).  However, such evidence is inadmissible if it is highly prejudicial and without significant probative value.  Taylor v. Commonwealth, 17 Va. App. 271, 275, 437 S.E.2d 202, 204 (1993).

The Commonwealth prosecuted Mullins for distributing cocaine.  Admitting into evidence cocaine that the Commonwealth did not link to Mullins was highly prejudicial because cocaine was a substance that went to the heart of the charged crime.  To prove the manner of packaging, the Commonwealth could have

introduced empty baggies tied in a particular way.  Instead, the trial judge permitted the Commonwealth to offer proof of a substance that could have inflamed the passions of the jury.  We hold the trial judge abused his discretion in allowing such proof and the corresponding certificate of analysis.

For these reasons, we reverse Mullins' convictions due to the trial judge's abuse of discretion in failing to grant a mistrial and in admitting the bag of cocaine and certificate of analysis.  We remand this case for a new trial.

<u>Reversed and remanded</u>.